### GARY BROWN *v.* KAREN BROWN
### (AC 31801)

Gruendel, Lavine and Bear, Js.

Argued May 26—officially released August 2, 2011

*Michael S. Taylor*, with whom was *Kenneth J. Bartschi*, for the appellant (plaintiff).

*David R. Schaefer*, with whom was *Sean M. Fisher*, for the appellee (defendant).

*Opinion*

GRUENDEL, J. In this marital dissolution action, the plaintiff, Gary Brown, appeals from the judgment of the trial court with respect to the court's financial orders. On appeal, the plaintiff claims that the court abused its discretion by (1) awarding the defendant, Karen Brown,

$20,000 in monthly alimony payments without sufficient evidence of his income and (2) excluding evidence regarding the state of his financial condition at the time of trial. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The parties married on November 28, 1982, in Woodbridge. On November 5, 2009, the court rendered judgment dissolving the parties' marriage and entered related financial orders.[1] By the time of the parties' divorce, the plaintiff had enjoyed a successful career as a prodigious and highly competent entrepreneur, particularly within the real estate development market.[2] As documented by his financial affidavit, the total value of the plaintiff's assets equaled approximately $3.1 million as of May, 2009, and it was undisputed that for the four year period immediately preceding their divorce, the parties lived on between $600,000 and $1 million of annual, tax free cash withdrawals from the plaintiff's businesses and investments, which the court, in its memorandum of decision, explicitly deemed as "income."[3] The plaintiff also testified that from September, 2007, through December, 2008, he provided the defendant with at least $40,000 per month for her personal expenses.[4]

[1] There were no minor children issue of the marriage at the time of the dissolution. Also, by way of stipulation, the court did not consider evidence of fault with respect to the cause of the marital breakdown, nor did the court consider evidence as to the health of the parties.

[2] In addition to owning two profitable businesses, the plaintiff held ownership interests in more than fifteen New York City real estate properties (real estate properties).

[3] The plaintiff testified that, instead of drawing an annual salary from his businesses, he would regularly make tax free capital withdrawals whenever "he needed funds for personal expenses . . . for whatever purpose." In this way, the plaintiff avoided paying income taxes and listed on his financial affidavit "$0.00" in net monthly income. Notably, however, in the plaintiff's pretrial claims for relief, dated December 12, 2008, he represented that he has "typically drawn approximately $500,000 [to] $600,000 per year," presumably by way of tax free capital withdrawals.

[4] Although the defendant's financial affidavit, dated May 28, 2009, discloses approximately $2.6 million in total assets, it is undisputed that the gross income from her sole source of employment totals $24,000 annually.

During the underlying dissolution trial before the court in May and June, 2009, the plaintiff claimed that he had limited income and that his business ventures left him little in terms of overall asset value. Specifically, the plaintiff argued that, beginning in September, 2008, his extensive business investments, which previously had been of substantial value, now had limited worth and he was considering bankruptcy. Thus, the plaintiff maintained that he had no ability to provide the defendant with financial support in the form of alimony or otherwise. Nonetheless, in its November 5, 2009 memorandum of decision, the court explicitly determined that "much of the plaintiff's testimony as to the current status of his businesses as well as the future status of same can be considered self-serving."[5] As the court described, not only was the plaintiff's business debt "grossly exaggerated," but, "[s]ince the [parties'] separation [in early 2008, the plaintiff] has had an incomparable lifestyle, [including] expensive and extensive travel and lavish living expenses." Accordingly, having "considered . . . the criteria set forth in [General Statutes §§] 46b-81 and 46b-82 . . . as well as . . . the parties' gross and net income[s] [and] their assets and liabilities," the court ordered, inter alia, that the plaintiff pay the defendant $20,000 in monthly, tax free alimony.[6] Further, the court ordered that the plaintiff's alimony obligation was to be nonmodifiable until he paid the defendant $2 million toward the amount due her for her beneficial ownership interest in the plaintiff's real

[5] For example, in its memorandum of decision, the court remarked on the complexities of the plaintiff's asset manipulation and derivative cash flow by noting that the "[p]laintiff candidly admits it would take a [certified public accountant] a month to figure out his cash flow and how much money goes to him" by way of capital withdrawals.

[6] The court reasoned that, "[w]hile the order for tax free [alimony] is unusual, it is equitable since [the] plaintiff's real estate and other investments generate tax losses which result in his paying little or no tax [and the] defendant should have the advantage of this tax saving." The plaintiff has not challenged this aspect of the court's alimony award on appeal.

estate properties. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the court improperly awarded the defendant $20,000 in monthly alimony payments without sufficient evidence of his income. Specifically, the plaintiff claims that in the absence of any evidence as to either his earned income or earning capacity at the time of the dissolution judgment and, in light of the court's failure to articulate any amount of income attributable to him, there was no evidentiary basis to justify the court's alimony award. We are not persuaded.

"Because the plaintiff's first claim on appeal challenges the factual bases of the financial orders rendered by the court at the time it dissolved the marriage, we review that claim under the abuse of discretion standard. In fashioning its financial orders, the court has broad discretion, and [j]udicial review of a trial court's exercise of [this] broad discretion . . . is limited to the questions of whether the . . . court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action. . . . That standard of review reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties." (Internal quotation marks omitted.) *Wallbeoff* v. *Wallbeoff*, 113 Conn. App. 107, 110, 965 A.2d 571 (2009).

"In dissolution proceedings, the court must fashion its financial orders in accordance with the criteria set forth in . . . § 46b-81 (division of marital property),

. . . § 46b-82 (alimony) and [General Statutes] § 46b-84 (child support). All three statutory provisions require consideration of the parties' amount and sources of income in determining the appropriate division of property and size of any child support or alimony award. . . ." (Internal quotation marks omitted.) *Picton* v. *Picton*, 111 Conn. App. 143, 157–58, 958 A.2d 763 (2008), cert. denied, 290 Conn. 905, 962 A.2d 794 (2009). With respect to the present claim concerning alimony, General Statutes § 46b-82 (a) provides in relevant part: "In determining whether alimony should be awarded, and the duration and amount of the award, the court shall hear witnesses, if any, of each party . . . shall consider the length of the marriage . . . the age . . . station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ." "The court is to consider these factors in making an award of alimony, but it need not give each factor equal weight. . . . We note also that [t]he trial court may place varying degrees of importance on each criterion according to the factual circumstances of each case. . . . There is no additional requirement that the court specifically state how it weighed the statutory criteria or explain in detail the importance assigned to each statutory factor." (Citation omitted; internal quotation marks omitted.) *Kaczynski* v. *Kaczynski*, 124 Conn. App. 204, 211, 3 A.3d 1034 (2010).

Finally, "[o]ur Supreme Court has emphasized the importance of using an expansive definition of income when formulating financial orders during the course of marriage dissolution proceedings. . . . Adopting a flexible definition of income, the court has explained, ensures that each spouse fulfills his or her continuing duty to support one another and each receives his or

her equitable share of the marital assets." (Internal quotation marks omitted.) *Picton* v. *Picton*, supra, 111 Conn. App. 158. In this regard, "[l]ifestyle and personal expenses may serve as the basis for imputing income where conventional methods for determining income are inadequate." (Internal quotation marks omitted.) *Carasso* v. *Carasso*, 80 Conn. App. 299, 304, 834 A.2d 793 (2003), cert. denied, 267 Conn. 913, 840 A.2d 1174 (2004). Moreover, [w]here a party through his own wrongful conduct limits the financial evidence available to the court, that party cannot complain about the resulting calculation of a monetary award." (Internal quotation marks omitted.) *Palazzo* v. *Palazzo*, 9 Conn. App. 486, 488–89, 519 A.2d 1230 (1987).

Here, the plaintiff maintains that the court's alimony award was improper because there was no evidence of his "past or present income . . . and no finding of any amount of income" attributable to him at the time of the parties' divorce. The record reveals unequivocally, however, that in the four years immediately preceding the divorce, the parties lived on between $600,000 and $1 million of annual, tax free "income" and, from September, 2007, to December, 2008, the plaintiff paid the defendant a minimum of $40,000 per month for her personal expenses. In contrast to the plaintiff's claim, his pretrial claims for relief, dated December 12, 2008, explicitly represent that he has "typically drawn approximately $500,000 [to] $600,000 per year" from his various assets. As the court noted, the parties' lifestyle, as documented by their expenditures, was "incomparable" in that "nothing was spared." Although the plaintiff's financial affidavit discloses "$0.00" in net monthly income, such disclosure is consistent with the plaintiff's utilization of capital withdrawals from his numerous business assets to avoid receipt of taxable income. Additionally, we decline to accept the plaintiff's principal argument, raised both at trial and before this court,

that, as of September, 2008, the deterioration in the value of his business investments deprived him of the ability to provide the defendant with financial support in the form of alimony or otherwise. The plaintiff's argument in this regard is belied both by evidence of the total value of his assets, and the court's specific determination that much of the plaintiff's testimony in support of his argument was "self-serving," particularly given the fact that "he takes money as he needs it from the companies he runs." Our review of the court's memorandum of decision indicates that, even assuming the veracity of the plaintiff's argument that there has been a "decrease of income and assets," the plaintiff has continued to live "an incomparable lifestyle, [including] expensive and extensive travel and lavish living expenses." Indeed, in light of this apparent plethora of evidence regarding the plaintiff's lifestyle and personal expenses, we fail to see any justification for the plaintiff's contention that the court's alimony award lacked sufficient evidentiary support. See *Carasso* v. *Carasso*, supra, 80 Conn. App. 304. To the contrary, the record is clear that the court's alimony award was premised both on a thorough consideration of the parties' unique life circumstances at the time of dissolution and the criteria set forth by § 46b-82. See *McKenna* v. *Delente*, 123 Conn. App. 146, 162, 2 A.3d 38 (2010) ("[b]ecause every family situation is unique, the trial court drafting a dissolution decree has wide discretion to make suitable orders to fit the circumstances"). Therefore, we conclude that the court's alimony award did not constitute an abuse of discretion, and, accordingly, the plaintiff's claim fails.

II

The plaintiff next claims that the court improperly excluded evidence regarding the state of his financial condition at the time of trial. Specifically, the plaintiff

argues that the court incorrectly precluded him from testifying as to the deterioration of the value of his real estate properties after January 23, 2009. We disagree.

The following additional facts are relevant to our disposition of the plaintiff's claim. During trial, both parties presented expert testimony as to the total value of the plaintiff's real estate properties. Because of the pervasive volatility present in the real estate market prior to and during trial, the parties stipulated that the expert testimony would be based on a valuation of the real estate properties as of January 23, 2009, and that there would be no further testimony "about events after that or updates after that" by either party. On June 3, 2009, the court heard testimony from the plaintiff regarding the economic condition of his business investments, at which point the following colloquy ensued:

"[The Plaintiff's Counsel]: Okay. You've heard the testimony . . . of two different experts, and they've testified as of January 23, 2009. Correct?

"[The Plaintiff]: Correct.

"[The Plaintiff's Counsel]: What has been your experience in the rental markets since January 23, 2009?

"[The Defendant's Counsel]: Objection. Your Honor, we stipulated that we're not going to have evidence—

"The Court: Sustained, if there's an objection.

"[The Plaintiff's Counsel]: Oh, well, I'll make an offer of proof.

"The Court: Of course.

"[The Plaintiff's Counsel]: We stipulated that the experts weren't going to update their reports beyond January 23, 2009. This gentleman is certainly entitled to testify what his experience has been currently, certainly since January 23, 2009.

"The Court: How does that help the court?

"[The Plaintiff's Counsel]: It helps the court because the court is supposed to use current value when it makes its determinations.

"The Court: I'm going to sustain the objection. Okay.

"[The Plaintiff's Counsel]: Okay. If the witness were allowed—

"The Court: And I note your objection.

"[The Plaintiff's Counsel]: And I'm going to make an offer of proof because if the witness were allowed to testify he would testify that—

"The Court: Okay.

"[The Plaintiff's Counsel]:—the rents were significantly lower."

Thereafter, the plaintiff was precluded from testifying further as to the value of his real estate properties subsequent to January 23, 2009. The plaintiff now claims that the court improperly precluded his testimony and thereby improperly excluded evidence regarding the value of his real estate properties at the time of trial.

Before addressing the merits of the plaintiff's claim, we begin by setting forth the applicable standard of review and legal principles governing our analysis. "The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence . . . [and its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . In addition, [b]efore a party is entitled to a new trial because of an erroneous evidentiary

ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result. . . . When judging the likely effect of such a trial court ruling, the reviewing court is constrained to make its determination on the basis of the printed record before it. . . . In the absence of a showing that the [excluded] evidence would have affected the final result, its [exclusion] is harmless." (Citation omitted; internal quotation marks omitted.) *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 382–83, 999 A.2d 721 (2010).

"A formal stipulation of facts by the parties to an action constitutes a mutual judicial admission and under ordinary circumstances should be adopted by the court in deciding the case." (Internal quotation marks omitted.) *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC*, 273 Conn. 724, 745, 873 A.2d 898 (2005). "Judicial admissions are voluntary and knowing concessions of fact by a party or a party's attorney occurring during judicial proceedings. . . . A judicial admission is, in truth, a substitute for evidence, in that it does away with the need for evidence. . . . A party is bound by a judicial admission unless the court, in the exercise of its discretion, permits the admission to be withdrawn, explained or modified." (Citation omitted; internal quotation marks omitted.) *Levine* v. *Levine*, 88 Conn. App. 795, 804, 871 A.2d 1034 (2005).

Here, it is undisputed that the parties stipulated that any expert testimony regarding the value of the plaintiff's real estate properties would be based on their value as of January 23, 2009, and that no further evidence in this regard would be offered by either party. Nonetheless, the plaintiff claims that the court improperly excluded evidence during the trial by precluding

him from testifying as to the fact that "rents were significantly lower" for his real estate properties after January 23, 2009. At no time, however, has the plaintiff described how his testimony would have altered the court's financial orders other than by claiming that, without his testimony, the court could not have entered financial orders based on the present total value of his assets. Not only does this argument contradict the parties' binding stipulation, but also, from our review of the record, it is clear that the plaintiff's argument is nothing more than a reiteration of his more general contention that at the time of the parties' divorce, "he ha[d] limited assets and income and . . . his extensive business investments . . . now have limited worth." Notwithstanding the plaintiff's proffered testimony, the court was well aware of his argument that he lacked the financial ability to support the defendant; an argument that in many respects the court deemed "self-serving." Therefore, assuming arguendo that the court erroneously excluded the plaintiff's testimony, we fail to see how the excluded evidence would have affected the court's financial orders and, as such, any error was harmless. See *Misthopoulos* v. *Misthopoulos*, supra, 297 Conn. 383. Accordingly, the plaintiff's claim is unavailing.

The judgment is affirmed.

In this opinion the other judges concurred.