******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MAREA A. DUMBAULD *v.* THEODORE E. DUMBAULD
(AC 37262)

Lavine, Beach and Mihalakos, Js.

*Argued November 18, 2015—officially released March 8, 2016*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, S. Richards, J.)

*Charles T. Busek*, for the appellant (defendant).

*Reuben S. Midler*, with whom, on the brief, was *Michael J. Weil*, for the appellee (plaintiff).

*Opinion*

MIHALAKOS, J. In this ongoing marital dissolution action, the defendant, Theodore E. Dumbauld, appeals from the judgment of the trial court awarding the plaintiff, Marea A. Dumbauld, pendente lite alimony and child support, and ordering the defendant to pay family bills, educational expenses for two college age children of the marriage, and health care costs for the plaintiff and the parties' four children.[1] On appeal, the defendant claims that the trial court (1) abused its discretion by exceeding the bounds of a proper alimony pendente lite award, (2) committed error by ordering "that the defendant pay the family bills and expenses he had been paying voluntarily" and by characterizing these payments as alimony,[2] and (3) abused its discretion by exceeding the bounds of a proper order regarding college expenses. We reverse the judgment of the trial court.

The plaintiff commenced a dissolution of marriage action on June 8, 2012, and thereafter filed multiple pendente lite motions. The trial court heard testimony over four days, and issued a memorandum of decision on June 4, 2014, in which it made the following findings of fact.

The parties were married on May 16, 1992. They have four children, three of whom have reached the age of majority. At the time of the court's memorandum of decision, two of them were attending high school, and two were attending college and living on campus. The plaintiff was the full-time caretaker for the two children who live at home. The plaintiff held a 50 percent interest in Bella Tu, LLC, a company that designs tops, tunics, and dresses and sells them by way of trade shows to clothing boutiques. The business had not generated a profit since its inception in 2009. The defendant had managed and operated a variety of hedge funds, although his employment at the time was as the chief executive officer of Simulyze, a defense contractor he formed in 2012.

Prior to and during the dissolution action, the parties' monthly expenses totaled approximately $50,000.[3] They paid these expenses through a combination of the defendant's base salary of $252,000 and the use of various liquid assets. Since February, 2013, the defendant had been withdrawing funds from a business bank account listed as Trident Advisors, LLC, to make up for the shortfall between his salary and the parties' monthly expenses.[4] The balance in this liquid account was $332,000 as of November 8, 2013.

The court found in pertinent part: "Based on their prior spending of roughly $50,000 a month to maintain their lifestyle prior to their separation, which neither party disputes, the court finds that $50,000 is the monthly amount the parties spent when they were

together as a couple. The court also finds that the defendant has been withdrawing liquid assets to the tune of $348,000 approximately and using his $252,000 salary to support their $600,000 a year way of life before they separated. In light of the foregoing, the court further finds that $600,000 a year or $50,000 a month is what is needed to support the family's expenditures. The court makes the further finding that the defendant can afford to pay $50,000 a month to maintain their previous standard of living." It also found: "Although the plaintiff testified that she needed to borrow funds from her family and friends and charge expenses because the $1250 a week she has been receiving from the defendant was insufficient to meet her needs, the court finds her testimony in this regard is not credible and further finds that she has been borrowing nearly $10,000 more each month in excess of the parties' normal spending rate of $50,000 a month for their ordinary living expenses. Additionally, the court finds that the plaintiff's allegation that the defendant did not pay certain bills and refused to pay invoices that were payable in advance was not persuasive. The credible evidence in the record shows that the defendant had either paid [or] was in the process of paying . . . invoices that were actually due and payable as had been his practice when they lived together."

The court then ordered the defendant to pay alimony pendente lite in the amount of $1250 per week, as he had been doing, to the plaintiff. It also ordered "that the defendant continue to pay the family bills and expenses he has been paying voluntarily prior to the issuance of this order." It further ordered that he pay child support of $603 per week; all postsecondary education expenses; and all medical, dental, orthodontic, and other medical expenses for the plaintiff and the four children, including insurance premiums, copays, and other unreimbursed expenses. It also granted the plaintiff's motion for counsel fees in part and granted the plaintiff's motion for exclusive possession of the family domicile, with the caveat that the defendant was permitted to use the property for the purpose of exercising his family time, provided he gave sufficient notice to the plaintiff.[5]

On June 24, 2014, the defendant moved for clarification of the court's decision and moved to open and reargue the court's decision, claiming that the orders exceeded his ability to pay. He further claimed, in pertinent part, that the total of family expenses, alimony, and child support the court had ordered totaled $58,000 per month, which was more than the $50,000 the court found he was able to pay. Moreover, the parties' financial affidavits included child support costs, the voluntary payments the defendant had been making to the plaintiff prior to the pendente lite award, and the postsecondary education payments the defendant had been making, resulting in double counting. The court permit-

ted oral argument on August 15, 2014,[6] and subsequently denied both motions on the ground that the court's memorandum of decision spoke for itself and the defendant had failed to cite sufficient legal grounds. The defendant then filed the present appeal.[7]

The defendant claims on appeal that the two alimony orders,[8] for weekly payment to the plaintiff and for payment of family expenses, exceeded the bounds of a proper alimony pendente lite award, and thereby constituted an abuse of discretion.[9] He also claims that the trial court exceeded the bounds of a proper order regarding college expenses.

At the outset, we set forth the standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law." (Citation omitted; internal quotation marks omitted.) *Williams* v. *Williams*, 276 Conn. 491, 496–97, 886 A.2d 817 (2005). Additional facts will be set forth as necessary.

I

The defendant claims that the court improperly ordered alimony pendente lite in excess of his net income, which it found to be $15,688.21 per month, and impermissibly required him to use assets in order to meet his obligations. In other words, the defendant claims that the court's order amounts to an impermissible distribution of marital assets pendente lite. The plaintiff responds that the court properly imputed additional income to the defendant on the basis of the parties' prior spending habits.[10] She also asserts that the pendente lite alimony award of $1250 per week, $5416.66 per month, taken by itself, is not excessive when compared to the defendant's net income of $15,688.21 per month. We agree with the defendant.

General Statutes § 46b-83 (a) provides in relevant part: "At any time after the return day of a complaint under section 46b-45 or 46b-56 or after filing an application under section 46b-61, and after hearing, alimony and support pendente lite may be awarded to either of the parties from the date of the filing of an application therefor with the Superior Court. Full credit shall be given for all sums paid to one party by the other from the date of the filing of such a motion to the date of rendition of such order. In making an order for alimony pendente lite, the court shall consider all factors enu-

merated in section 46b-82, except the grounds for the complaint or cross complaint, to be considered with respect to a permanent award of alimony. . . ."[11] The factors enumerated in General Statutes § 46b-82 (a) are "the length of the marriage . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability and feasibility of such parent's securing employment."[12] "The court is to consider these factors in making an award of alimony, but it need not give each factor equal weight. . . . We note also that [t]he trial court may place varying degrees of importance on each criterion according to the factual circumstances of each case. . . . There is no additional requirement that the court specifically state how it weighed the statutory criteria or explain in detail the importance assigned to each statutory factor." (Citations omitted; internal quotation marks omitted.) *Kaczynski* v. *Kaczynski*, 124 Conn. App. 204, 211, 3 A.3d 1034 (2010).

"The purpose of alimony pendente lite is to provide support to a spouse [whom] the court determines requires financial assistance pending the dissolution litigation and the ultimate determination of whether that spouse is entitled to an award of permanent alimony." (Internal quotation marks omitted.) *Friezo* v. *Friezo*, 84 Conn. App. 727, 732, 854 A.2d 1119, cert. denied, 271 Conn. 932, 859 A.2d 930 (2004). "[T]he fundamental purpose of alimony pendente lite is to provide the [recipient spouse], during the pendency of the divorce action, with current support in accordance with [the recipient spouse's] needs and the [obligor spouse's] ability to meet them." (Internal quotation marks omitted.) Id., 734; see also *England* v. *England*, 138 Conn. 410, 413, 85 A.2d 483 (1951) ("[p]ayments pursuant to such an award constitute 'a fund for the current support of the [recipient spouse]' "). "[A]limony is not designed to punish, but to ensure that the former spouse receives adequate support." *Greco* v. *Greco*, 275 Conn. 348, 361, 880 A.2d 872 (2005). It is a "long settled principle that the [obligor spouse's] ability to pay is a material consideration in formulating financial awards." Id.

The defendant argues that the court's alimony orders were improper because they exceeded his net income, which the court specifically found to be $15,688.21 per month. The defendant is correct that "an award of alimony and support must be based on net income after taxes, not gross income." *Keller* v. *Keller*, 141 Conn. App. 681, 684, 64 A.3d 776 (2013). Although net income, rather than gross income, should be used in the calculation of "income" when determining alimony, this principle does not, by itself, bar the court from ordering alimony in excess of net income after examining all of

the factors.

The plaintiff argues that "[l]ifestyle and personal expenses may serve as the basis for imputing income where conventional methods for determining income are inadequate." (Internal quotation marks omitted.) *Brown* v. *Brown*, 130 Conn. App. 522, 5228, 24 A.3d 1261 (2011). In support of this proposition, she cites to *Brown* as well as *Carasso* v. *Carasso*, 80 Conn. App. 299, 304, 834 A.2d 793 (2003), cert. denied, 267 Conn. 913, 840 A.2d 1174 (2004), and *Graham* v. *Graham*, 25 Conn. App. 41, 46, 592 A.2d 424, cert. denied, 220 Conn. 903, 593 A.2d 969 (1991).

While *Carasso* and *Brown* appear to permit a court to order alimony to be paid out of assets, they are distinguishable from the present case, as are several other similar cases, in that the trial court in those cases found that the alimony payor had not accurately represented his financial situation and made a specific finding as to either imputed income or earning capacity. In addition, each is based on a final dissolution judgment or a motion for contempt following a final dissolution judgment, rather than on a pendente lite award. In *Brown*, although the plaintiff's financial affidavit disclosed no net monthly income, the court found that the plaintiff's testimony was self-serving, and that he "takes money as he needs it from the companies he runs." (Internal quotation marks omitted.) *Brown* v. *Brown*, supra, 130 Conn. App. 529. In *Carasso*, the trial court discredited that defendant's testimony, examined his assets, and then found that he was "currently earning, or had the present capacity to earn, a net income of $70,000." *Carasso* v. *Carasso*, supra, 80 Conn. App. 303. This court then concluded that "[b]ecause the court did not find the defendant credible, the court did not abuse its discretion when it used his spending level as a factor in determining his income in the absence of other methods of determining income." Id., 305. Likewise in *Evans* v. *Taylor*, 67 Conn. App. 108, 111–12, 786 A.2d 525 (2001), this court upheld the trial court's decision, when "neither party was completely forthcoming in reporting his or her income"; id., 112; to calculate net income for child support purposes based on expenses. Finally, in *Collette* v. *Collette*, 177 Conn. 465, 469–70, 418 A.2d 891 (1979), our Supreme Court upheld a trial court's award of alimony based on that defendant's prior ability to pay the family expenses when it disbelieved his account of his financial situation.

In the present case, the trial court made no finding that the defendant's testimony was not credible, or that he had income or earning capacity that he had failed to disclose.[13] It made no finding of imputed income; in contrast with the cases cited by the plaintiff, conventional methods were sufficient to determine the defendant's net income in the present case. The trial court also found that he could "afford to pay $50,000 a month

to maintain their previous standard of living." This is similar to the court's finding in *Graham* v. *Graham*, supra, 25 Conn. App. 46, that the parties' lifestyle had been built on a mixture of their income and use of the defendant's assets. The trial court in *Graham* then ordered alimony payments that would require use of those same assets in its dissolution judgment. Id., 43, 46. This court affirmed the trial court's judgment after examining the statutory factors and concluding: "Where, as here, it is apparent that the trial court considered all mandatory factors in fashioning its orders, we are not permitted to vary the weight that the trial court placed upon the statutory criteria in reaching its decision." Id., 45. Likewise, in *Simms* v. *Simms*, 283 Conn. 494, 505–507, 927 A.2d 894 (2007), our Supreme Court reversed a trial court decision, on a postjudgment motion to modify alimony, in which the trial court ruled that it could not make an order which would require use of liquid assets to pay alimony, and decreased the alimony award from $78,000 to $1 per year, following the defendant's sale of his business and his retirement. Id., 505–507. Our Supreme Court held that "[t]he trial court correctly noted that it had no authority to modify the division of the parties' property after the original dissolution judgment . . . or to order the defendant to sell his assets to satisfy his alimony obligation. That does not mean, however, that the court had no authority to consider the value of the parties' assets in determining the amount of the modification or, in appropriate circumstances, to order the defendant to pay alimony if doing so may require him to invade his assets." (Citation omitted.) Id., 505. It then reversed the trial court. Id., 510.

While *Graham* and *Simms* permitted payment of alimony with assets based on a finding of ability to pay rather than imputed income, they are both distinguishable from the present case in that neither concerned pendente lite alimony. *Graham*, while similar to the present case, concerned a dissolution judgment in which, pursuant to § 46b-81, the court has the power to transfer property between spouses. *Simms* concerned postjudgment financial orders; the distribution of marital property had already occurred.

The key issue in the present case is whether the court had the power in a pendente lite alimony order to order payment of alimony out of assets, which amounted to a distribution of marital property. As stated in *Rubin* v. *Rubin*, 204 Conn. 224, 228–29, 527 A.2d 1184 (1987): "While a divorce court, as a court of equity, has been deemed to possess the inherent power to adjudicate the property rights of the parties before it . . . the power of a court to transfer property from one spouse to the other must rest upon an enabling statute. . . . Authority in Connecticut for such a transfer of property is found in . . . § 46b-81 . . . ." (Citations omitted.) See also *Callahan* v. *Callahan*, 157 Conn. App. 78, 88,

116 A.3d 317 ("[O]ur courts have no inherent power to transfer property from one spouse to another in a marital dissolution proceeding. . . . Instead, that power rests upon an enabling statute . . . § 46b-81 [a]." [Citation omitted.]), certs. denied, 317 Conn. 913, 914, 116 A.3d 813 (2015).

Section 46b-81 provides in relevant part: "(a) At the time of entering a decree . . . dissolving a marriage . . . the Superior Court may assign to either spouse all or any part of the estate of the other . . . . (c) In fixing the nature and value of the property, if any, to be assigned, the court . . . shall consider the . . . needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. . . ."[14] The pendente lite enabling statute, § 46b-83, in contrast, contains no such language; it does not provide that the court may assign part of the estate of one party to the other, or otherwise suggest that property distribution is permitted. It does, via reference to § 46b-82, include each party's estate in the factors to be considered, but this in itself does not imply that the estate could be ordered liquidated in order to pay alimony; rather, the size of an estate could indicate whether a spouse needed income and the amount which that spouse could pay for his or her own support. "The purpose of alimony is to meet one's continuing duty to support . . . while the purpose of property division is to unscramble the ownership of property, giving to each spouse what is equitably his." (Citation omitted; internal quotation marks omitted.) *Rubin* v. *Rubin*, supra, 204 Conn. 228.

On the basis of our comparison of §§ 46b-81 and 46b-83, we conclude that distribution of property is not authorized by § 46b-83. See *Rubin* v. *Rubin*, supra, 204 Conn. 229 ("the power of a court to transfer property from one spouse to the other must rest upon an enabling statute"). If a court orders the use of assets to pay pendente lite alimony, it decides the issue of property distribution before it is statutorily authorized to do so. We conclude that the trial court's order in the present case, given its specific factual findings and the absence of a finding of imputed income or lack of credibility, amounts to an impermissible pendente lite property distribution.

## II

The defendant claims that the court erred in ordering him to pay all college education costs for the two children in violation of General Statutes § 46b-56c, which limits education support orders to the amount charged by the University of Connecticut for a full-time in-state student. The plaintiff responds that the parties had entered into a stipulation that the defendant would pay the full costs, as permitted by § 46b-56c (f). We agree with the defendant.

In considering this claim, we first set out the following

additional procedural history and facts as found by the court.

On February 1, 2013, three months prior to the hearings on pendente lite alimony, the parties entered into a stipulation on the record before the court, *S. Richards, J.* As stated by the plaintiff's attorney, the defendant agreed to "pay the following sums today, or no later than Monday morning in order—especially as to the two girls . . . their tuition payments, which are past due and are needed to be made so they can complete the year:

"American University will be paid the sum of $27,015.50. Barnard [College] will be paid the sum of $23,186.80.

"In addition it is agreed—and this money, by the way I should state, is coming from an escrow account . . . . And that they've been authorized to release those funds to [the defendant] so that he can make these payments promptly." The parties also stipulated to real estate tax and mortgage payments, which would be paid from the escrow.

The plaintiff's attorney continued: "This agreement on the payments is made, Your Honor, without prejudice to either party in the sense that neither party will be held to have made an evidentiary or judicial admission that the sums paid or the source of the payments or the mechanism of the payment, binds either party as being an appropriate sum, or that it is based upon the underlying claims of either of the parties as to income, assets, or liabilities." The defendant's attorney indicated his client agreed. The court accepted the stipulation and requested that the parties prepare a written stipulation, but the record before us does not indicate whether either party did so. The plaintiff filed the transcript of the hearing regarding the stipulation as an exhibit in the pendente lite hearing.

In its memorandum of decision on the pendente lite orders, the court stated that it had considered the statutory criteria, including § 46b-56c, then ordered: "All college tuition costs and expenses related thereto for the parties' two adult children shall be paid by the defendant during the pendency of this proceeding." It did not specify the amount of tuition to be paid, or rule that the parties had entered into an agreement concerning these expenses.

Section 46b-56c provides in relevant part: "(a) For purposes of this section, an educational support order is an order entered by a court requiring a parent to provide support for a child or children to attend for up to a total of four full academic years an institution of higher education or a private occupational school for the purpose of attaining a bachelor's or other undergraduate degree, or other appropriate vocational instruction. An educational support order may be

entered with respect to any child who has not attained twenty-three years of age and shall terminate not later than the date on which the child attains twenty-three years of age. . . . (b) . . . (2) On motion or petition of a parent, the court may enter an educational support order at the time of entry of an order for support pendente lite pursuant to section 46b-83. . . . (f) The educational support order may include support for any necessary educational expense, including room, board, dues, tuition, fees, registration and application costs, *but such expenses shall not be more than the amount charged by The University of Connecticut for a full-time in-state student* at the time the child for whom educational support is being ordered matriculates, except this limit may be exceeded by agreement of the parents. . . ." (Emphasis added.)

The court made no finding that the parties had entered into an agreement to exceed the limit imposed by § 46b-56c (f). The transcript from the February 1, 2013 hearing clearly refers to a onetime payment; the parties specifically stipulated that this payment would not serve as an admission, and would not be binding on either party. Evidence regarding the costs of each child's education was in each party's financial affidavit. By ordering that the defendant pay the full education costs under these circumstances, the trial court violated § 46b-56c, which limits an educational support order to the amount of in-state University of Connecticut tuition.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion LAVINE, J. concurred.

[1] It is well established that pendente lite financial orders rendered in an ongoing marital dissolution action are immediately appealable. See *Angle* v. *Angle*, 100 Conn. App. 763, 768–69, 920 A.2d 1018 (2007).

[2] The defendant failed to brief the issue of how the family expenses should be categorized, therefore we decline to consider this issue. See *Ziemba* v. *Commissioner of Correction*, 90 Conn. App. 70, 71, 875 A.2d 597, cert. denied, 276 Conn. 895, 884 A.2d 1029 (2005).

[3] The court made this determination on the basis of the parties' financial affidavits; according to the plaintiff's financial affidavit the plaintiff's total expenses were $50,473 and according to the defendant's financial affidavit the defendant's were $48,381. Both affidavits included the costs of maintaining the family's lifestyle, such as the costs associated with the parties' children and the costs of maintaining the family home.

[4] The trial court did not make a finding as to whether the Trident Advisors, LLC, account was solely in the defendant's name, or in the names of both the plaintiff and the defendant. The defendant testified that he was the sole member of Trident Advisors, LLC.

[5] The defendant was living in a rented apartment in Washington, D.C., in order to work at Simulyze.

[6] The court commented at the argument on the defendant's motions for clarification and to reargue that its intent had been to maintain the status quo. The court further commented that both the $1250 per week order and the expenses order were alimony pendente lite orders, and that it did not attribute the defendant with any further earning capacity. At the hearing regarding the pendente lite orders, the defendant testified that their arrangement, prior to and during the dissolution proceedings, had been that the defendant would pay the majority of bills directly, while the plaintiff paid various other costs, such as food and other household costs, out of the $1250 he gave to her as an "allowance."

[7] As part of this appeal, the defendant did not file a motion for articulation with the trial court, or a motion for review with this court. See Practice Book § 66-5. The defendant also did not assert a double counting claim before us. "[I]n the absence of a question relating to subject matter jurisdiction, the Appellate Court may not reach out and decide a case before it on a basis that the parties never have raised or briefed." *Sabrowski* v. *Sabrowski*, 282 Conn. 556, 559-61, 923 A.2d 686 (2007).

[8] The defendant construes the payment of family expenses as alimony based on the trial court's comments at the hearing on his motions to reargue and for clarification, even though the court ultimately denied these motions, and did not provide further clarification. The following colloquy occurred:

"The Court: So the court's pendente alimony order was both.

"[The Defendant's Counsel]: Was both the $1250—

"The Court: Plus the expenses, right, because what the court—this is the problem that the court was facing in looking at the evidence, that there [were] expenditures by both parties for the benefit of the adult aged children and there was no—that I can recollect, there was no evidence rebutting any money spent by one or the other party for the benefit of the adult aged children, which may mean that the overall expenses may have gone down."

[9] The defendant separates the two payments into two issues, but we will consider them together.

[10] While the plaintiff interprets the court's order as based on imputed income, the court did not make a finding of imputed income, and found a specific income of $15,688.21 per month.

[11] General Statutes § 46b-83 provides: "(a) At any time after the return day of a complaint under section 46b-45 or 46b-56 or after filing an application under section 46b-61, and after hearing, alimony and support pendente lite may be awarded to either of the parties from the date of the filing of an application therefor with the Superior Court. Full credit shall be given for all sums paid to one party by the other from the date of the filing of such a motion to the date of rendition of such order. In making an order for alimony pendente lite, the court shall consider all factors enumerated in section 46b-82, except the grounds for the complaint or cross complaint, to be considered with respect to a permanent award of alimony. In making an order for support pendente lite, the court shall consider all factors enumerated in section 46b-84. The court may also award exclusive use of the family home or any other dwelling unit which is available for use as a residence pendente lite to either of the parties as is just and equitable without regard to the respective interests of the parties in the property.

"(b) In any proceeding brought under section 46b-45, 46b-56 or 46b-61 involving a minor child, if one of the parents residing in the family home leaves such home voluntarily and not subject to court order, and if the court finds that the voluntary leaving of the family home by such parent served the best interests of the child, the court may consider such voluntary leaving as a factor when making or modifying any order pursuant to section 46b-56."

[12] General Statutes § 46b-82 provides: "(a) At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order pursuant to subsection (b) of this section or an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. The court may order that a party obtain life insurance as such security unless such party proves, by a preponderance of the evidence, that such insurance is not available to such party, such party is unable to pay the cost of such insurance or such party is uninsurable. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability and feasibility of such parent's securing employment.

"(b) If the court, following a trial or hearing on the merits, enters an order pursuant to subsection (a) of this section, or section 46b-86, and such order by its terms will terminate only upon the death of either party or the remarriage of the alimony recipient, the court shall articulate with specificity the basis for such order.

"(c) Any postjudgment procedure afforded by chapter 906 shall be available to secure the present and future financial interests of a party in connection with a final order for the periodic payment of alimony."

[13] At oral argument before this court, the plaintiff also claimed that due to his prior employment in hedge funds and his present involvement in, and control of, a variety of business entities, the defendant's true financial situation was hidden from the trial court. The trial court made no such finding, and only referenced one specific business account as a potential source of funds to pay the orders.

[14] General Statutes § 46b-81 provides: "(a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either spouse all or any part of the estate of the other spouse. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either spouse, when in the judgment of the court it is the proper mode to carry the decree into effect.

"(b) A conveyance made pursuant to the decree shall vest title in the purchaser, and shall bind all persons entitled to life estates and remainder interests in the same manner as a sale ordered by the court pursuant to the provisions of section 52-500. When the decree is recorded on the land records in the town where the real property is situated, it shall effect the transfer of the title of such real property as if it were a deed of the party or parties.

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after considering all the evidence presented by each party, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."