******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ISABELLA MENSAH *v.* CHARLES MENSAH
(AC 37412)

DiPentima, C. J., and Beach and Schaller, Js.

*Argued March 2—officially released July 26, 2016*

(Appeal from Superior Court, judicial district of Hartford, Ficeto, J. [motion for continuance; orders].)

*Isabella Mensah*, self-represented, the appellant (plaintiff).

*Thomas S. Rome*, for the appellee (defendant).

*Opinion*

BEACH, J. In this postjudgment marital dissolution matter, the plaintiff, Isabella Mensah, appeals from the judgment of the trial court. She claims that the court abused its discretion by (1) denying her motion for a continuance, and (2) making improper financial orders. We affirm the judgment of the court.

On October 27, 2014, the court issued its memorandum of decision, in which it recounted the relevant procedural history of the case and made the following factual findings. "This matter comes before the court by way of a remand from the Appellate Court. [See *Mensah* v. *Mensah*, 145 Conn. App. 644, 75 A.3d 92 (2013) (*Mensah I*).] The dissolution was tried before the court on December 12, 15, and 16, 2011. [See *Mensah* v. *Mensah*, judicial district of Hartford, Docket No. FA-10-4051277-S (February 23, 2012).] A decision dissolving the marriage and entering the financial orders was issued on February 23, 2012. The decision was appealed and judgment was reversed as to the financial orders only.

"The matter was scheduled for five days of trial commencing September 15, 2014. The trial did not commence until September 17. Counsel for the plaintiff [Attorney Josephine Smalls Miller (Miller)] and the plaintiff did not appear. The reasons for the plaintiff's failure to appear and the court's ensuing actions are articulated in the court file.

"The uncontroverted evidence is as follows. The parties were married for over twenty years. The parties' three children have reached the age of majority; two children are under the age of twenty-three. The defendant is an independent contractor for a trucking company. The plaintiff is a long-term employee of the United States Postal Service. . . .

"The plaintiff's pension with the U.S. Postal Service had an accrued benefit of $1656 per month payable at age sixty as of December 31, 2011. The January 1, 2012 value of the accrued benefit was $229,744. The marital portion of the pension was calculated at $223,269. The plaintiff is also holder of a Thrift Savings Plan. . . .

"The parties are owners of the marital home located at 101 Rockville Road, Broad Brook . . . . The plaintiff has had exclusive possession of the home since April, 2011. . . . The plaintiff has not made mortgage payments on the home since she took possession. . . . The home is now 'under water.' [The defendant] testified that he and the plaintiff paid $120,000 toward the purchase price of the home. . . . The court notes . . . that based on the evidence produced by the defendant, the equity in the home at the time of dissolution was approximately $86,000."

After making its findings, the court issued the follow-

ing orders relevant to this appeal: (1) no party was awarded alimony; (2) the marital home was awarded to the plaintiff; she was ordered to hold the defendant harmless on the mortgage, arrearages, interest, penalties, and associated expenses; and she was ordered to pay the defendant $43,000, representing one half of the equity in the home; and (3) the defendant was awarded a pro rata share of the plaintiff's pension benefits. This appeal followed.

I

The plaintiff claims that the court abused its discretion in failing to continue the trial of this matter because Miller "had a significant health issue" that prevented her from attending trial. We are not persuaded.

We first set forth our standard of review and the relevant legal principles that guide our analysis. "The determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. . . . A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. . . . To prove an abuse of discretion, an appellant must show that the trial court's denial of a request for a continuance was arbitrary. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. . . . In the event that the trial court acted unreasonably in denying a continuance, the reviewing court must also engage in harmless error analysis. . . .

"Among the factors that may enter into the court's exercise of discretion in considering a request for a continuance are the timeliness of the request for continuance; the likely length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; [and] the [movant's] personal responsibility for the timing of the request . . . . We are especially hesitant to find an abuse of discretion where the court has denied a motion for continuance made on the day of the trial. . . .

"Lastly, we emphasize that an appellate court should limit its assessment of the reasonableness of the trial court's exercise of its discretion to a consideration of those factors, on the record, that were presented to the trial court, or of which that court was aware, at the time of its ruling on the motion for a continuance." (Internal quotation marks omitted.) *State* v. *Godbolt*, 161 Conn. App. 367, 374–75, 127 A.3d 1139 (2015), cert.

denied, 320 Conn. 931, 134 A.3d 621 (2016).

Additional facts demonstrate that the court did not abuse its discretion by denying the plaintiff's motion for a continuance. The trial was scheduled to begin on September 15, 2014, but on that day the court received a motion for a continuance from Miller in which she stated that she had been "compelled to seek medical treatment and consequently is unable to be in attendance at trial at the present time." In response, the court continued the trial until September 17, 2014, and entered an order that Miller "shall appear and show cause as to why the court should not enter the following sanctions, including but not limited to: sanctions, fines, attorney's fees, preclusion of evidence, and referral to the grievance committee. . . . [Miller] shall provide proof of medical treatment on said date."

On September 17, 2014, the court received a letter from Miller that read: "I am in receipt of the order dated September 15, 2014. I will not be able to be present on the continued trial scheduled for today due to a medical condition that requires attention. On September 14, I visited a walk-in clinic and discovered a condition that caused me to seek further medical attention on September 15. . . . Efforts to resolve this medical issue are continuing. . . . I respectfully decline to place my health at further risk and renew my motion to reschedule the trial of this matter." Miller attached two documents to her letter—one indicated that Miller visited a clinic on September 14, 2014, and the other indicated that she had been seen again on September 15, 2014. No further information regarding her visits, health, or ability to come to court was provided.

At the hearing on September 17, 2014, the court found that the information Miller had provided was not a sufficient basis upon which to grant the continuance. Notably, the court found: (1) the September 15, 2014 motion was not timely because it had not been received by the court until ten o'clock on the morning the trial was set to begin; (2) the case already had been substantially delayed and that another continuance would set the date back "at least another six to seven months, if not longer"; (3) the case was a 2010 dissolution action, and the court "has gone . . . to extraordinary measures . . . in an attempt to . . . resolve the financial issues that these parties have, including at least four status conferences, a continuance of a trial, and the appointment of a special master for discovery . . . in an attempt to resolve the ongoing discovery issues"; (4) Miller did not provide "enough information to say whatever her medical condition may or may not be"; (5) the court had already granted a continuance in February, 2014; (6) Miller had filed a motion for a continuance the week prior, on September 9, 2014, and it had been denied; and (7) Miller had not complied with the standing orders of the court by not providing the pro-

posed orders, witness lists, "or any other information that's required under the court's standing order."

The plaintiff has not met her burden of showing that the court acted unreasonably or arbitrarily in denying her motion for a continuance. The court concluded that Miller's explanation for needing the continuance did not constitute good cause because it contained no specific information about Miller's condition or whether she actually had been incapable of attending trial because of health concerns. The court's findings are supported by the record and provide a well reasoned basis for the court's denial of the plaintiff's motion for a continuance.

Our case law supports the court's decision. See *State* v. *Beckenbach*, 198 Conn. 43, 48, 501 A.2d 752 (1985) (denying continuance when, as in present case, "[n]o specific or even approximate date was given to the court as to when [the attorney] might have been able to conduct the defendant's trial. The trial court, therefore, could reasonably have viewed the motion as seeking a continuance of unspecified duration."); *Peatie* v. *Wal-Mart Stores, Inc.*, 112 Conn. App. 8, 11–13, 961 A.2d 1016 (2009) (upholding denial of motion for continuance when trial court already had granted continuance for four months and plaintiff did not make motion until morning of hearing); *Bove* v. *Bove*, 93 Conn. App. 76, 84, 888 A.2d 123 (noting Connecticut courts are "especially hesitant to find an abuse of discretion where the court has denied a motion for continuance made on the day of trial" [internal quotation marks omitted]), cert. denied, 277 Conn. 919, 895 A.2d 788 (2006); *McDuffee* v. *McDuffee*, 39 Conn. App. 412, 417, 664 A.2d 1164 (1995) (holding court did not abuse discretion by denying mother's request for continuance in custody hearing because she was defendant in criminal case, her availability was "a matter of speculation . . . [and] court cannot be charged with failing to anticipate accurately the date" mother would be available for hearing [internal quotation marks omitted]).

Our Supreme Court faced a similar issue in *Thode* v. *Thode*, 190 Conn. 694, 462 A.2d 4 (1983), and it concluded that the trial court did not abuse its discretion by denying a motion for a continuance. There, the defendant's attorney did not report to court for trial following the denial of a previous request by the attorney for a continuance. The court denied the defendant's motion for a continuance, and, although the defendant wanted to be represented by the absentee attorney, the defendant was represented by an associate of his attorney's firm. Id., 696. The Supreme Court concluded that the denial of the defendant's motion was not an abuse of discretion, but it noted that it was "not insensitive to the apparent harshness of any decision by a court that may be perceived as punishing the client for the transgressions of his or her attorney." Id., 698. In the circumstances of this case, we share this sentiment of our

Supreme Court even though we conclude that the trial court's action was "a permissible exercise of the court's discretion to deny a continuance." Id., 699.

The trial court in the present matter carefully considered a number of factors in reaching its decision to deny the plaintiff's motion. The plaintiff has not met her burden of showing that the court acted unreasonably or arbitrarily in doing so. Accordingly, we reject the plaintiff's claim that the court abused its discretion.

II

The plaintiff raises several additional claims in her brief, which stem functionally from the court's denial of her motion for a continuance. She claims that the court abused its discretion by (1) failing to examine the defendant in sufficient detail regarding his income, (2) not awarding the plaintiff alimony, (3) failing to recalculate the defendant's child support obligation, (4) not allocating the real property owned by the defendant in Ghana, (5) awarding all liabilities regarding the marital residence against the plaintiff, and (6) awarding the defendant one half of the plaintiff's pension benefits. We do not agree.

We first set forth our standard of review. "Our standard of review for financial orders in a dissolution action is clear. The trial court has broad discretion in fashioning its financial orders, and [j]udicial review of a trial court's exercise of [this] broad discretion . . . is limited to the questions of whether the . . . court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action. . . . That standard of review reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties." (Citation omitted; internal quotation marks omitted.) *Casey* v. *Casey*, 82 Conn. App. 378, 383, 844 A.2d 250 (2004).

As to the factual findings made by the court underlying its financial orders, these "findings of a trial court must stand . . . unless they are clearly erroneous or involve an abuse of discretion. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one

reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *Hammel* v. *Hammel*, 158 Conn. App. 827, 832–33, 120 A.3d 1259 (2015).

The court, in rendering its financial orders, "considered all the credible evidence presented to it along with its observation of the demeanor and attitude of the parties. All the exhibits have been carefully reviewed and considered, as well as relevant common law . . . ." Because neither Miller nor the plaintiff appeared for the trial, the court considered the evidence in this hearing "uncontroverted . . . ."

The plaintiff first asserts that the court "should have inquired of [the] defendant why his financial affidavit and his trial testimony [fail] completely to mention [his income producing business that involved the purchase and sale of motor vehicles shipped to Ghana]." This line of inquiry may have been appropriate for cross-examination of the defendant, but the plaintiff chose not to attend trial. The court was under no obligation to cross-examine the defendant on the behalf of the absentee plaintiff. The plaintiff argues that our decision in *Mensah I* required the court to engage in a more active role in view of the remand from this court. See *Mensah* v. *Mensah*, supra, 145 Conn. App. 654. We have reviewed carefully this court's decision in *Mensah I* and find no such directive. Rather, this court simply remanded the case for a new hearing on all financial issues. The court held the requisite hearing, but the plaintiff presented no evidence and was not present to cross-examine the defendant about his finances; therefore, the court's resulting financial orders are derived only from the evidence that it had before it. The plaintiff suggests that the court should have relied on evidence that the plaintiff had alluded to in the previous trial pertaining to the defendant's property and business in Ghana. See *Mensah* v. *Mensah*, supra, Superior Court, Docket No. FA-10-4051277-S. The court was not compelled to act, in effect, as an advocate for the plaintiff; "[i]t is not the province of this or any court to speculate as to evidence not before it." *Demartino* v. *Demartino*, 79 Conn. App. 488, 497–98, 830 A.2d 394 (2003).

The plaintiff next argues that the court abused its discretion in failing to award her alimony because the defendant had been dishonest at the first trial regarding his income. The court stated in its memorandum of decision that it had considered the criteria set forth in General Statutes § 46b-82 as to the assignment of alimony.[1] The plaintiff argues, simply, that her twenty-one year marriage to the defendant warranted alimony and that the defendant had been dishonest regarding his income.[2] The length of the parties' marriage, however, is but one factor that the court considered under § 46b-82 and is not in itself necessarily dispositive in determining

whether alimony is appropriate. The court considered the range of factors in § 46b-82, and it was not an abuse of discretion to decline to award the plaintiff alimony solely on the basis of the marriage's duration. Accordingly, the plaintiff's claim fails.

The plaintiff also contends that the court abused its discretion by not recalculating the defendant's child support obligation. She argues that "there was no testimony forthcoming from [the] defendant regarding child support . . . ." As we have already stated, it is not the obligation of the court to elicit testimony or to cross-examine witnesses on behalf of absentee parties. It was not, therefore, an abuse of the court's discretion to rely on the evidence that had been offered at trial—namely, testimony that the parties' youngest child had reached the age of majority—in determining that child support did not need to be recalculated.

Similarly, the plaintiff's next argument—that the court abused its discretion by making no allocation of the defendant's alleged property in Ghana—also fails. The defendant testified that he held no title to property in Ghana. Prior to trial, the plaintiff did not comply with the court's standing orders to resolve ongoing discovery issues, and to submit proposed orders, witness lists, and any other information required by the court. The court, then, had no evidence before it to suggest that the defendant's testimony was not truthful. The plaintiff's argument that "[e]ven [if] no evidence was presented regarding the valuation of these properties, [the] court should have acknowledged . . . the parties' financial affidavits that these were marital assets and attempted to divide said properties. . . . A reasonable remedy could and should have been fashioned that permitted [the plaintiff] to recover some of the value of these marital real property assets." It was not an abuse of discretion for the court to decline to attempt to allocate properties which, according to testimony, were not owned by the defendant and about which "no evidence was presented . . . ."

The plaintiff's next two arguments—that the court abused its discretion by assigning all liabilities regarding the marital residence to the plaintiff and awarding to the defendant one half of her pension benefits—are without merit. She argues that the court's decision did not result in "an equitable distribution of assets" in light of evidence that had been presented at the first trial.[3] Neither of these claims has any basis in the record of this case or in our case law.

Finally, the plaintiff argues that the court improperly awarded attorney fees to the defendant. She asserts that the award of attorney fees "[gives] the appearance . . . that every effort has been made to ensure payment [of] [defense] counsel, even to the detriment of [the] [p]laintiff." On the record in this case, we conclude that this claim is without merit.

For these reasons, we conclude that the court neither abused its discretion nor made clearly erroneous findings as to any of the issues raised by the plaintiff in this matter.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "[General Statutes §] 46b-82 governs awards of alimony. That section requires the trial court to consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to [General Statutes §] 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment in ordering either party to pay alimony to the other. In awarding alimony, [t]he court must consider all of these criteria. . . . It need not, however, make explicit reference to the statutory criteria that it considered in making its decision or make express findings as to each statutory factor." (Internal quotation marks omitted.) *Kovalsick* v. *Kovalsick*, 125 Conn. App. 265, 271, 7 A.3d 924 (2010).

[2] The plaintiff analogizes her case to the matter of *Brown* v. *Brown*, 130 Conn. App. 522, 24 A.3d 1261 (2011). In *Brown*, the plaintiff husband appealed from the trial court's award of alimony to the defendant wife. The plaintiff argued that the court did not have before it sufficient evidence of his past or present income and had made no explicit finding of his income at the time of his divorce. The court had found that the plaintiff enjoyed a lavish lifestyle and wanted for nothing, and it noted that the plaintiff's testimony was "self-serving." (Internal quotation marks omitted.) Id., 529. On appeal, this court affirmed the trial court's alimony award, holding that the "apparent plethora of evidence regarding the plaintiff's lifestyle and personal expenses" provided the trial court's award sufficient evidentiary support. Id.

*Brown* is not applicable to the present matter. Here, the plaintiff does not claim that the court lacked sufficient evidence in reaching its alimony determination, as did the plaintiff in *Brown*. Instead, she argues that the defendant was dishonest, and, like the " 'self-serving' " husband in *Brown*; id.; he should have to be made to pay alimony. We reject this argument entirely. The plaintiff presented no evidence at trial that the defendant was dishonest, and the court made no finding that the defendant was not credible in its weighing of the factors in § 46b-82. "[I]t is axiomatic that the credibility of witnesses, the finding of facts, and the drawing of inferences are all within the trier's province. It is futile to assign error involving the weight of testimony or the credibility of witnesses." (Internal quotation marks omitted.) *Petro* v. *Petro*, 31 Conn. App. 582, 583, 626 A.2d 791, cert. denied, 227 Conn. 907, 632 A.2d 694 (1993).

The court considered "all the credible evidence presented to it along with its observation of the demeanor and attitude of the parties" in reaching its decision. The court was within its discretion to choose whether to rely on the defendant's testimony and the evidence that he presented, and the plaintiff cannot prevail on her claim the court abused that discretion. She was not present to cross-examine the defendant or introduce impeaching evidence.

[3] Indeed, the court stated at trial on September 17, 2014, that "you have to assume that anything that's [from] the previous trial, the court isn't going to have."