ISABELLA C. MENSAH *v.* CHARLES O. MENSAH
(AC 34534)

Lavine, Alvord and Bear, Js.

Argued May 23—officially released September 10, 2013

*Josephine Smalls Miller*, for the appellant-cross appellee (plaintiff).

*Thomas S. Rome*, for the appellee-cross appellant (defendant).

*Opinion*

ALVORD, J. The plaintiff, Isabella C. Mensah, appeals from the judgment of the trial court dissolving her marriage to the defendant, Charles O. Mensah, and from the court's order granting the defendant's postjudgment motion for appellate attorney's fees. On appeal, the plaintiff claims that the court abused its discretion in dividing the marital estate, in failing to award her alimony, in calculating the amount of child support, and in granting the defendant's postjudgment motion for appellate attorney's fees payable from joint marital assets. The defendant cross appeals from the judgment, claiming that the court abused its discretion by precluding expert testimony as to the value of the plaintiff's pension benefits and by failing to award the defendant

a share of the plaintiff's pension and thrift savings plan. We reverse the judgment of the trial court only as to its financial orders because we conclude that the court lacked an evidentiary basis for those orders. We also vacate the court's order granting the defendant's post-judgment motion for appellate attorney's fees.

The following facts and procedural history are relevant to the plaintiff's appeal and the defendant's cross appeal. The parties were married on August 30, 1991, and three children were born of the marriage.[1] The plaintiff was employed by the United States Postal Service, which sponsored both a pension plan and a thrift savings plan. Occasionally she earned additional income as a day trader. The defendant derived his income from two businesses. In one business, the defendant purchased motor vehicles in the United States and shipped those vehicles to Ghana, where they were sold at a profit. The defendant also owned a delivery business called Eagle Delivery Service.

With respect to marital assets, the parties had invested in three properties located in Ghana during the course of the marriage. Additionally, they owned a marital home in Broadbrook, although it was heavily encumbered and had little or no equity at the time of the dissolution. Other assets of the marriage included personal property in the marital home and several motor vehicles.

The plaintiff commenced this action on June 29, 2010. Discovery requests were made by both parties, and both parties claimed that there had been insufficient compliance with those requests. Numerous motions for contempt and motions to compel were filed by the parties, and the court, *Abery-Wetstone, J.*, held a hearing on October 14, 2011, to resolve outstanding discovery issues. By order issued that same day, the court

---

[1] Only one child was a minor at the time of the dissolution judgment.

directed each party to produce particular documents within specified time periods. The court concluded: "If either party fails to comply with the above orders, a $50 a day sanction shall accrue until provided to the other side."[2] On December 8, 2011, four days before the first day of the scheduled trial, the plaintiff filed a motion to preclude the defendant from testifying as to his income or his real property interests at trial because of "his refusal to produce relevant information requested during the discovery phase" of this action.

On December 12, 2011, before any evidence was presented, the court, *Prestley, J.*, asked the parties whether they believed it would be productive for the court and counsel to meet in chambers in an effort to settle the matter. The parties agreed to the court's suggestion, and the plaintiff, the defendant and the parties' counsel all signed a stipulation allowing the court to conduct pretrial discussions to explore settlement possibilities without being disqualified from presiding over any subsequent trial between the parties. See *Krattenstein* v. *G. Fox & Co.*, 155 Conn. 609, 612–616, 236 A.2d 466 (1967).

A few hours later, the court reconvened and stated on the record that the matter had not been resolved and the trial would commence. The court also stated that, although the court would no longer be involved in settlement negotiations, counsel could continue their efforts when court was not in session. At the end of the day, the court encouraged the parties to reach an agreement on outstanding issues and expressed its concern about the lack of information regarding the parties' financial situation: "I haven't heard much testimony so far, but I get a definite sense that, you know, people have not been forthcoming, across the board, about money spent, about where it [has] gone, about businesses, about accounts, about account values. In many

---

[2] Our review of the court file reveals that the court's sanction was not imposed on either party.

cases, I don't even have a value. I mean, you're asking a court to make a ruling that's fair and equitable, when I don't even know what [the plaintiff's] pension is worth. I don't even know what [the defendant's] business is worth. And, you know, no business valuation was done here, no pension valuation was done here. There's nothing. . . . You know, how does this case possibly get tried with all these missing gaps? . . .

"So I want to leave you with that. You can talk to your lawyers. I hope that you will actually sit down and have a meeting, prior to Thursday. You know, my guess is we're probably going to be right back here on Thursday, nobody will have made any movement on anything, there will still be lots of missing information, and I will just have to maybe shoot from the hip, in terms of making a decision here. . . . I'll just have to make a decision with what I have, which is not a complete picture of what's gone on in this case. . . .

"I am not going to give this case any kind of a continuance either. This is it. All right? And we're not going to give any more time to go try and find more documents. We're doing it. We're going to get this done. So we'll see you. I hope you give this some thought, and we'll see where you are."

The following trial day, December 15, 2012, the court began with the statement: "At counsel's request, we've met again this morning. It's clear to the court that there is no possibility of an agreement. I'm not going to take any more time, in terms of judicial economy, to meet with anyone any further on this case. Let's just get the evidence, and I'll make a decision on it." The trial continued that day and concluded on December 20, 2011, with counsel's closing arguments. The court directed counsel to submit their revised proposed orders within one week and then stated: "I will try and come up with what I think is a fair decision given the,

in some cases, limited testimony that I have,[3] particularly in numbers and appraisals and so forth, but I will do the best job that I can."

The court issued its memorandum of decision on February 23, 2012. In support of its orders, the court made the following findings of fact: (1) lack of candor with the court and noncompliance with discovery requests on the part of both parties, particularly the defendant, made the court's determination of income or assets exceedingly difficult; (2) the reported valuation of the plaintiff's pension was not realistic and its value was "likely much higher than . . . stated on her financial affidavit"; (3) family assets had been invested in three properties in Ghana with an undetermined value; (4) the defendant told the plaintiff that he had an interest of approximately $360,000 in one of the Ghana properties; (5) although "[i]t is . . . clear that the defendant has property interests in Ghana . . . [h]e has not been forthcoming with the court about any of [those] interests"; (6) ascertaining the defendant's actual income was complicated because "the defendant was not forthcoming with required discovery, was evasive, and was not credible in his testimony"; (7) the evidence established that the defendant was the owner of an income producing business involving the purchase and sale of motor vehicles shipped to Ghana; (8) the evidence established that the defendant owned an income producing delivery business called Eagle Delivery Service; (9) the documentation provided by the defendant for Eagle Delivery Service was "sporadic and incomplete, and was limited to just a few months of bank statements for this entity over a four year period and a few tax returns"; (10) the defendant did not provide any income documentation for the eight month period prior to trial; and (11) the evidence established "systematic and ongoing conduct by the defendant

[3] The plaintiff and the defendant were the only witnesses to testify at trial.

designed to conceal his actual income and assets" from the plaintiff and the court.

Relying on those factual findings, the court entered orders dividing the marital estate and awarding child support. The court determined, inter alia, that neither party was to be awarded alimony, that custody of the minor child was to be awarded to the plaintiff, that the defendant was to pay $283 per week as child support, that the marital home was to be awarded to the plaintiff, that the plaintiff was to hold the defendant harmless on the mortgage and any current liens, that the defendant was to retain any property interests he had in the Ghana properties and in his two businesses, that each party was to retain his or her retirement accounts free of any claim of the other party, that $40,000 was to be awarded to the defendant as his share of the equity from the plaintiff's pension, thrift savings, and savings and checking accounts, and that each party was responsible for his or her own attorney's fees. The plaintiff appealed from the court's judgment on April 23, 2012, and the defendant filed his cross appeal on May 25, 2012.

On June 20, 2012, the defendant filed a postjudgment motion for "a reasonable sum" of appellate attorney's fees. The plaintiff filed an opposition to the motion, claiming that there was an automatic stay of all financial orders that precluded such an award. At a hearing held on July 11, 2012, which was not attended by the plaintiff or her counsel, the defendant's counsel requested the specific sum of $29,366.30 as an allowance to defend against the plaintiff's appeal and to prosecute the defendant's cross appeal. At that hearing, he submitted documentation to the court showing that he had rendered services totaling $9366.30 to date in connection with the appeal and cross appeal. He called Attorney Steven R. Dembo as an expert witness, who testified that the amounts already expended were reasonable and that

$20,000 as an allowance for future work would be reasonable. At the conclusion of the hearing, the court stated that it had a "pretty clear picture" of the relative financial positions of the parties, that it had considered the provisions of General Statutes § 46b-62,[4] and that it found the requested amount of $29,366.30 to be a reasonable allowance for the appeal and cross appeal. The court granted the defendant's motion. The plaintiff filed an amended appeal to include the court's postjudgment award of appellate attorney's fees to the defendant.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Angle* v. *Angle*, 100 Conn. App. 763, 771–72, 920 A.2d 1018 (2007). Therefore, "to conclude

---

[4] General Statutes § 46b-62 provides in relevant part: "In any proceeding seeking relief under the provisions of this chapter . . . the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ."

that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Demartino* v. *Demartino*, 79 Conn. App. 488, 493, 830 A.2d 394 (2003).

"In dissolution proceedings, the court must fashion its financial orders in accordance with the criteria set forth in [General Statutes] § 46b-81 (division of marital property), [General Statutes] § 46b-82 (alimony) and [General Statutes] 46b-84 (child support). All three statutory provisions require consideration of the parties' amount and sources of income in determining the appropriate division of property and size of any child support or alimony award." (Internal quotation marks omitted.) *Brown* v. *Brown*, 130 Conn. App. 522, 526–27, 24 A.3d 1261 (2011). In the present case, the court expressly stated that the parties, particularly the defendant, had failed to provide the requisite discovery information as to the amount and sources of their income. The plaintiff, with the limited documentation that she had, nevertheless managed to demonstrate that the defendant ran two income producing businesses. The defendant, however, failed to produce any income documentation whatsoever with respect to those businesses for the eight months prior to trial. Furthermore, the court expressly found that the defendant systematically had concealed his actual income and assets from the plaintiff and the court.

There is a heightened duty of disclosure in marital cases. *Duart* v. *Dept. of Correction*, 303 Conn. 479, 500, 34 A.3d 343 (2012). "Unlike civil litigants who stand at arm's length from one another, marital litigants have a duty of full and frank disclosure analogous to the relationship of fiduciary to beneficiary . . . ." (Internal quotation marks omitted.) Id., 501. The plaintiff needed information regarding the defendant's actual income and assets to prepare and to try her case; see *Ramin*

v. *Ramin*, 281 Conn. 324, 338, 915 A.2d 790 (2007); and the court needed this information to enter orders that were not based on speculation and conjecture.

The dearth of financial information placed the court in a difficult position and precluded it from making fair and equitable orders in the dissolution judgment. The court, during the trial and in its memorandum of decision, acknowledged that it did not have sufficient evidence of the parties' financial circumstances. The court also was unequivocal in its position that no continuance would be granted to secure additional documentation. The court's orders with respect to alimony and the division of the marital estate, without sufficient financial information, lacked the requisite evidentiary basis. Further, the amount of the child support order was based on the income of the plaintiff and the defendant. Although the court stated that it was using the child support guidelines in its determination of the amount, the figures used by the court lacked sufficient evidentiary support.[5] "Although we recognize that the guidelines create a legal presumption as to the amount of child support payments . . . the figures going into that calculation on the worksheet must be based on some underlying evidence." (Citation omitted.) *Aley* v. *Aley*, 101 Conn. App. 220, 228–29, 922 A.2d 184 (2007). For these reasons, we conclude that the court did not have sufficient evidence on which to base its orders in the dissolution judgment.

With respect to the defendant's postjudgment motion for appellate attorney's fees, the court granted the motion based on its knowledge of the "relative financial positions of the parties." As previously discussed, the court did not have sufficient financial information from which to make that determination. Accordingly, the

---

[5] "It is not the province of this or any court to speculate as to evidence not before it." *Demartino* v. *Demartino*, supra, 79 Conn. App. 497–98.

court's ruling on the postjudgment motion lacked a reasonable basis in facts and cannot stand.[6]

The judgment is reversed as to the financial orders only and the case is remanded for a new hearing on all financial issues. The order granting the defendant's postjudgment motion for appellate attorney's fees is vacated.

In this opinion the other judges concurred.

---

[6] On July 24, 2012, the plaintiff filed a motion for sanctions with this court requesting that the defendant's counsel, Thomas Rome, be sanctioned for procuring a postjudgment order and the disbursement of $29,366.30 from a joint TD Ameritrade account as an allowance to pay the defendant's appellate attorney's fees to defend the plaintiff's appeal and to prosecute the defendant's cross appeal. The defendant obtained the order from the trial court, *Prestley, J.,* on July 11, 2012, without first having requested a lift of the automatic stay. After the plaintiff filed a motion for review of the July 11, 2012 order, this court ordered Rome to maintain the $29,366.30 in his IOLTA client's fund account. At oral argument before this court, the parties were told that the motion for sanctions remained pending.

We have issued the following order with respect to the plaintiff's motion for sanctions: "The plaintiff's motion for sanctions dated July 24, 2012, is denied. In light of this court's decision on the plaintiff's appeal and amended appeal, and the defendant's cross appeal, it is hereby ordered that Attorney Thomas Rome return the $29,366.30, with appropriate interest, from his IOLTA client's fund account to the joint TD Ameritrade account."