******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARY ANN BRITTO *v.* JOHN J. BRITTO, JR.
(AC 36973)
(AC 37117)

DiPentima, C. J., and Alvord and Agati, Js.

*Argued March 8—officially released June 14, 2016*

(Appeal from Superior Court, judicial district of Fairfield, Hon. Howard T. Owens, Jr., judge trial referee.)

*William B. Kellogg*, for the appellant (defendant).

*Timothy F. Butler*, with whom was *Meredith F. McBride*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant, John J. Britto, Jr., appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Mary Ann Britto. In these consolidated appeals,[1] the defendant claims that the court's findings as to his annual income and the values assigned to certain real estate holdings were clearly erroneous in light of the evidence in the record, and that the court abused its discretion by entering financial orders applicable to the defendant that were erroneous and burdensome. We reverse the judgment of the trial court limited to its findings regarding the values it assigned to the real estate holdings because we conclude that the court improperly disregarded the parties' stipulation as to those valuations.

The following facts and procedural history are relevant to the defendant's appeal. The parties were married on September 4, 1994, and two children were born of the marriage.[2] The plaintiff filed for dissolution of marriage on March 28, 2012, and a trial commenced on September 18, 2013.

The defendant was the principal owner of A-1 Janitorial, LLC, a single-member limited liability company, and he also owned several residential rental properties in Bridgeport. Prior to the trial, a forensic accountant was hired to determine the defendant's income from his janitorial company. The defendant did not provide the accountant or the court with tax returns from the previous year (2012) or certain other business records that could have aided in determining the defendant's income. Ultimately, the court found that the defendant had intentionally tried to hide assets: "The court is particularly concerned with the [defendant's] flagrant violations of the court orders relating to the transfer of assets. He fully acknowledged that several transfers of cash and real property were made deliberately subsequent to the service of process and the complaint in this dissolution action."[3]

On October 8, 2013, the court rendered judgment dissolving the marriage. The court issued its memorandum of decision on December 20, 2013, and ordered the defendant to pay alimony of 30 percent of his net annual income for sixteen years from the date of the judgment. Net income was defined by the court as: "all gross receipts from [the defendant's] self-employment, including but not limited to A-1 Janitorial, LLC, and A-1 Properties, LLC, after deductions for reasonable and actual business expenditures and state and federal taxes."[4] On the basis of the forensic accountant's analysis, the court concluded that the defendant's net income for 2012 was $230,000. Income taxes were not deducted. The defendant did not provide the court with evidence of income tax liability, and he did not claim to owe taxes on his income.[5]

The court also ordered the defendant to pay the plaintiff the cash equivalent of 60 percent of the value of four Bridgeport properties. The court found that the properties had been purchased by the defendant's girlfriend and his father using marital assets provided to them by the defendant while the divorce was pending. The court identified the four properties and their assigned values as: 25 Cartright Street, Unit 1K ($106,917); 2980 Madison Avenue, Unit G ($106,892); 2950 Madison Avenue, Unit C ($72,444); and 3012-7 Madison Avenue[6] ($107,041). The defendant was also ordered to pay to the plaintiff $191,641.95, representing the amount of marital assets that was transferred to the defendant's father while the dissolution of marriage was pending.[7] This appeal followed.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Therefore, to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Citation omitted; internal quotation marks omitted.) *Mensah* v. *Mensah*, 145 Conn. App. 644, 651–52, 75 A.3d 92 (2013).

I

The defendant claims on appeal that the court erred in calculating his net income for purposes of alimony. The defendant argues that the court's finding was clearly erroneous because the court relied on evidence of his gross income and did not consider his tax liability. We disagree.

"It is well settled that a court must base its child support and alimony orders on the available net income of the parties, not gross income. . . . Whether or not an order falls within this prescription must be analyzed on a case-by-case basis. Thus, while our decisional law in this regard consistently affirms the basic tenet that support and alimony orders must be based on net

income, the proper application of this principle is context specific." (Internal quotation marks omitted.) *Cleary* v. *Cleary*, 103 Conn. App. 798, 801, 930 A.2d 811 (2007).

This court cannot pass on issues of credibility and must defer to the trier of fact's assessment thereof. *Mensah* v. *Mensah*, supra, 145 Conn. App. 651–52. The court, as trier of fact in this case, imputed a net income of $230,000 to the defendant.[8] A review of the record supports the court's finding that $230,000 was the defendant's income net of taxes.

The court was not provided with the defendant's income tax filing for the previous year (2012), and the defendant testified that he had represented to the Internal Revenue Service that he had no tax liability for 2012. The testimony of the forensic accountant only covered the valuation of A-1 Janitorial, LLC, and the veracity of the company's records. The accountant did not testify as to the defendant's personal tax liability. On the basis of the evidence, the court could reasonably conclude that the defendant's gross income was equivalent to his net income because he testified that he had no tax liability. The defendant has complained about a lack of evidence presented to the court to establish his income after taxes, but if evidence of tax liability existed, the defendant was in the best position to disclose that information, and he failed to do so. We conclude that there was sufficient evidence to support the court's finding that the defendant's income after taxes was $230,000.

II

The defendant also claims that the court's findings as to the values of the four Bridgeport properties that were acquired for the defendant by his girlfriend and his father were clearly erroneous. The court ordered the defendant to pay the plaintiff 60 percent of the value of the four properties acquired in this manner. Before the court entered its order, the parties stipulated as to the values of each of the four properties. However, the court's judgment relied upon values that were greater than the parties' stipulation. We conclude that the court exceeded its authority by disregarding the stipulation. The court's findings as to valuation are severable from its financial orders. Remanding this issue to the court does not implicate the correctness of the court's other financial orders.

The following additional facts are relevant to the defendant's claim. The parties stipulated as to the value of thirteen properties that were potentially marital assets.[9] This stipulation contradicted an earlier submission by the plaintiff as to the values of some of the properties. In fact, several of the properties were assigned an agreed upon lower value than the plaintiff had previously proposed.[10] The stipulation was entered

as an exhibit with the court.

In its financial orders, the court awarded the plaintiff title to the marital home, a time-share, and four residential rental properties. The defendant retained title to all other properties that were listed in his name. As for the properties in dispute, the court elected to award the plaintiff 60 percent of the value of four of the properties. The court disregarded the stipulation agreed to by the parties regarding valuation of the four properties. Instead, the court used the higher valuations that the plaintiff had originally proposed. In its memorandum of decision, the court made no finding as to its basis for adopting the higher valuations. A review of the record reveals that the court did not notify the parties that it was disregarding the stipulated values.

### A

We begin with our standard regarding a stipulation. "In general, the effect of a trial stipulation by the parties is well established. While stipulations are not necessarily binding on the court and may justifiably be disregarded in certain circumstances, they ordinarily are adopted by the court. . . . If the court decides that it cannot adopt the parties' stipulation, the court should state on the record its disapproval of the agreement, as well as the reasons for its disapproval. . . . The court also should offer the parties an opportunity to present evidence prior to proceeding to judgment. . . . A trial court exceeds its authority if it disregards the terms of the parties' stipulation without notifying the parties and providing them an opportunity fully to litigate the controversy." (Citations omitted; internal quotation marks omitted.) *Cupe* v. *Commissioner of Correction*, 68 Conn. App. 262, 268–69, 791 A.2d 614, cert. denied, 260 Conn. 908, 795 A.2d 544 (2002).

At no point did the court state on the record its disapproval of the stipulation or provide its reasons for disregarding it. The record does not indicate that the court notified the parties that it was disregarding their stipulation or that the court provided the parties an opportunity to fully litigate the valuation issues. Although the court may have had a sound basis to disregard the stipulation, the court abused its discretion by not complying with our well settled procedural standards.

### B

Having concluded that the court abused its discretion, we must consider whether reversing the court's judgment regarding the valuations will require reconsideration of the entirety of the court's financial orders. "We previously have characterized the financial orders in dissolution proceedings as resembling a mosaic, in which all the various financial components are carefully interwoven with one another. . . . Accordingly, when an appellate court reverses a trial court judgment based

on an improper alimony, property distribution, or child support award, the appellate court's remand typically authorizes the trial court to reconsider all of the financial orders. . . . We also have stated, however, that [e]very improper order . . . does not necessarily merit a reconsideration of all of the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors. . . . In other words, an order is severable if its impropriety does not place the correctness of the other orders in question." (Citations omitted; internal quotation marks omitted.) *Maturo* v. *Maturo*, 296 Conn. 80, 124–25, 995 A.2d 1 (2010).

Only the plaintiff's portion of the real property in the marital estate will be diminished by adopting the values stipulated to by the parties.[11] The plaintiff has informed this court that upon a finding of error by the trial court, she has no interest in opening the remaining orders of the judgment. There is no evidence in the record that the court's valuation findings were interdependent with other orders and are based on a factor that is linked to other factors. Accordingly, the valuation findings are severable from the court's financial orders.

### III

We now address the defendant's claim that the court erred by distributing the same marital asset twice. Specifically, the defendant argues that the court erred by awarding the plaintiff $99,505.77 that he had transferred from the marital estate, in violation of the court's automatic stay on transfers, as well as 60 percent of the value of the real estate that these transferred funds were directly used to purchase.[12] We disagree. The defendant has failed to show that the court's financial orders were clearly erroneous.

The court found that the defendant transferred $191,641.95 out of the marital estate in violation of the court's automatic orders prohibiting dissipation of marital assets.[13] As part of its financial orders, the court ordered the defendant to pay the plaintiff 100 percent of these funds. The defendant presented evidence that some of these funds were directly used to finance the purchase of residential rental properties where title was acquired in the name of the defendant's girlfriend and his father. The plaintiff was awarded 60 percent of the value of four properties that were purchased by the defendant's girlfriend or his father using marital assets provided to them by the defendant.[14]

An appellant bears a heavy burden to show that the court's findings of fact were clearly erroneous. *In re Halle T.*, 96 Conn. App. 815, 825, 902 A.2d 670, cert. denied, 280 Conn. 924, 908 A.2d 1087 (2006). "With respect to the financial awards in a dissolution action, great weight is given to the judgment of the trial court

because of its opportunity to observe the parties and the evidence. . . . Our function in reviewing such discretionary decisions is to determine whether the decision of the trial court was clearly erroneous in view of the evidence and pleadings in the whole record. . . . In other words, judicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action." (Internal quotation marks omitted.) *Wood* v. *Wood*, 160 Conn. App. 708, 723, 125 A.3d 1040 (2015).

Throughout the trial and even now on appeal, quantifying the full extent of the assets available to the defendant and tracing the prohibited transfers of marital assets is akin to the challenge of hitting a moving target. During the trial, the defendant admitted that while being deposed he lied about assisting in the purchase of a condominium for his girlfriend.[15] The court found that the defendant made "flagrant violations of the court orders relating to the transfer of assets" and attempted to hide assets. Now on appeal, the defendant represents to this court that in his initial brief he confused which properties were purchased with the marital assets transferred in violation of Practice Book § 25-5.

The defendant clearly sought to deceive the trial court, yet now complains that the court in fact misapprehended the conversion of marital assets into real estate and the total value of the marital estate. It is the defendant's burden to show how the court's financial orders were clearly erroneous. Instead, the defendant has adopted a narrow view of the court's financial orders and has not presented a clear and concise accounting of all of the marital assets that he transferred from the marital estate. As the trial court noted in its memorandum of decision, "[t]he [defendant] has in fact turned a relatively uncomplicated dissolution action into a knotty and labyrinthian exercise . . . ." In view of the entire record in this case, we conclude that the trial court's division of assets was not clearly erroneous.

IV

In his final claim, the defendant argues that the court abused its discretion in entering financial orders that the defendant cannot satisfy. The defendant complains that he has been ordered to make monthly payments of child support, alimony, restitution for money transferred out of the marital estate, and the plaintiff's interest in the defendant's real estate holdings. We conclude that the trial court did not abuse its discretion.

"Our review is guided by the well established principle that [t]he resolution of conflicting factual claims falls within the province of the trial court . . . [and]

[t]he trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole." (Internal quotation marks omitted.) *Hopfer* v. *Hopfer*, 59 Conn. App. 452, 457, 757 A.2d 673 (2000).

Apart from the argument advanced in part II of this opinion, the defendant does little more than express general dissatisfaction with the court's financial orders. The court made detailed findings concerning the parties, including but not limited to those related to the amount and sources of their incomes, their financial assets, and their liabilities. The defendant has not provided any detailed facts to refute these findings or to demonstrate his inability to meet the court's financial orders. The court did not abuse its discretion.

The judgment is reversed only as to the trial court's decision to disregard the parties' stipulation as to the values assigned to certain real estate holdings and the case is remanded with direction to incorporate the stipulated values in the financial orders in accordance with this opinion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] On June 27, 2014, the defendant appealed (AC 36973) from the dissolution judgment as amended and clarified. On August 19, 2014, after the trial court issued a second clarification and a postjudgment order that the defendant pay the fees of a forensic accountant, the defendant filed a second appeal (AC 37117) claiming error in regard to the ordered fees. In December, 2014, the defendant amended his appeal in AC 36973 to challenge additional trial court rulings on numerous postjudgment motions, including motions for contempt and motions for counsel fees. On January 6, 2016, this court ordered that the appeals be consolidated.

The defendant has not briefed the claims of error identified on his appeal form in AC 37117 or on his amended appeal form in AC 36973. The defendant has therefore abandoned these claims. See *Deutsche Bank National Trust Co.* v. *Bertrand*, 140 Conn. App. 646, 648 n.2, 59 A.3d 864, cert. dismissed, 309 Conn. 905, 68 A.3d 661 (2013).

[2] Both children were minors at the time of the dissolution judgment.

[3] In an articulation issued by the court on June 12, 2015, the court further stated: "[A]s set forth in the original order, the court found that the defendant wilfully and intentionally failed to disclose his true income on his financial affidavit which was relied upon by the court in the Stipulation and Order Regarding Support dated June 21, 2012."

[4] The court provided its definition of "net income" in an amendment to and clarification of its order.

[5] During his testimony, the defendant was shown a federal income tax extension form for tax year 2012 that was sent to the Internal Revenue Service and prepared by the defendant's accountant. The defendant testified that the form stated that he would have zero tax liability for 2012.

[6] In their briefs, the parties refer to this property as 3012 Madison Avenue, Unit F.

[7] The court also issued orders dividing other assets of the marital estate and awarding child support. These orders have not been appealed.

[8] In the text of his brief, the defendant implies that the court's finding of $230,000 of gross income was not supported by evidence. After reviewing the record we disagree. On the basis of those partial business financial records that were obtained despite the defendant's recalcitrance, the forensic accountant testified at trial that A-1 Janitorial, LLC, generated $221,869 in earnings for the defendant in 2012. The accountant testified that he tested his assumptions about the business by also looking at the defendant's annual cash flows and personal expenses over a three year period. Using this approach, the accountant concluded that on average the defendant received $180,000 in earnings from A-1 Janitorial, LLC, per year and an additional

$52,000 per year in salary from A-1 Janitorial, LLC.

In estimating the defendant's 2012 earnings as $221,869, the accountant testified that the figure did not include any income that the defendant may have received from another job he worked or rental properties that he owned. In addition, the accountant testified that he believed that A-1 Janitorial, LLC, had unreported sales in 2012 based on tax documents and the defendant's own representations. In his calculations, the accountant included an estimate for the unreported sales, but he also testified that if actual sales were higher, then his estimate of the defendant's earnings from the business would be higher. Finally, he testified that the defendant did not draw a salary from A-1 Janitorial, LLC, in 2012.

On the basis of the record, there was evidence to support the court's conclusion that the defendant's income was $230,000.

[9] When the stipulation was submitted to the court, the defendant's counsel informed the court that, although he agreed with the property values, he did not agree that the court had subject matter jurisdiction over all of the properties listed. The defendant's girlfriend and his father held title to six of the properties listed as part of the stipulation.

[10] The valuations of the following properties decreased in the stipulation: 25 Cartright Street, Unit 1K, Bridgeport (stipulated value: $70,400); 2980 Madison Avenue, Unit G, Bridgeport (stipulated value: $49,500); 2950 Madison Avenue, Unit C, Bridgeport (stipulated value: $60,500); 3012 Madison Avenue, Unit F, Bridgeport (stipulated value: $60,500); 50 Greenhouse Road, Unit 41D, Bridgeport (stipulated value: $63,800); and 65 Hedgehog Road, Trumbull (stipulated value: $291,500) The plaintiff was not awarded any portion of the value of the real estate located on Greenhouse Road and Hedgehog Road.

[11] The sum of $152,394 is the difference between the values that the court adopted from the plaintiff's proposed amended orders that were submitted on September 19, 2013, and the values that the parties stipulated to in court on October 8, 2013. Applying the trial court's 60 percent allocation in favor of the plaintiff to the lower values from the stipulation will reduce the plaintiff's financial award by $91,436.40. The plaintiff's counsel stated during oral argument before this court: "The court can easily just order the valuations changed, it doesn't impact the rest of [the financial orders]. That is a detriment to my client, she's going to get less money as a result of that, she understands that. . . . The mosaic that would be upset if it's upset in any fashion, it's only to the detriment of my client, and she's aware of this and so advised me to relay to the court."

[12] In his brief, the defendant argued that the court had erred as to its financial orders regarding three Bridgeport properties: 3012 Madison Avenue, Unit F; 2890 Madison Avenue, Unit G; and 25 Cartright Avenue, Unit 1-K. In his reply brief, he has dropped this claim as it pertains to 2890 Madison Avenue, Unit G and 25 Cartright Avenue, Unit 1-K. However, he now argues that his claim also applies to the real estate located at 2950 Madison Avenue, Unit C, Bridgeport. The defendant's only explanation for the change is that he confused the properties.

[13] The rules of practice address automatic orders in family matters. Practice Book § 25-5 provides in relevant part: "The automatic orders shall be effective with regard to the plaintiff or the applicant upon the signing of the complaint or the application and with regard to the defendant or the respondent upon service and shall remain in place during the pendency of the action, unless terminated, modified, or amended by further order of a judicial authority upon motion of either of the parties . . . [i]n all cases involving a marriage or civil union, whether or not there are children . . . [n]either party shall sell, transfer, exchange, assign, remove, or in any way dispose of, without the consent of the other party in writing, or an order of a judicial authority, any property, except in the usual course of business or for customary and usual household expenses or for reasonable attorney's fees in connection with this action . . . [and] [n]either party shall conceal any property. . . ."

[14] The plaintiff contends that additional cash was withdrawn from the business during the pendency of the divorce and that there was no accounting for the size of these withdrawals or how this money was used by the defendant.

[15] "[The Plaintiff's Counsel]: Do you recall being asked these questions about 2950-C Madison Avenue condominium at your deposition?

"[The Defendant]: I believe so.

"[The Plaintiff's Counsel]: And do you recall me specifically asking you whether you made any contributions to that property?

"[The Defendant]: I think so, yes.

"[The Plaintiff's Counsel]: And do you recall hearing this question: And is—question, and it's your testimony that none of the income that you have earned has gone towards or been contributed towards the purchase of the condominium as far as you know that was done by Elizabeth Pereira. And your answer was, excuse me, yes, that's correct. Do you recall that testimony?

"[The Defendant]: Yeah, I believe I do.

"[The Plaintiff's Counsel]: Pardon?

"[The Defendant]: Yes, I believe I do.

"[The Plaintiff's Counsel]: So that testimony that you gave was false, is it not?

"[The Defendant]: I'm sorry, is it false?

"[The Plaintiff's Counsel]: Is it false?

"[The Defendant]: Yes, I have interest into it, yes.

"[The Plaintiff's Counsel]: So at the time when I asked you on June 19, 2013, under oath whether you had an interest in it, you denied it. Now today, you acknowledge it.

"[The Defendant]: After speaking to my attorney, correct."

————————————————————